# EXHIBIT K



One Penn Plaza
Suite 4701
New York, NY 10119
646/833-0900
646/833-0877 fax
www.tresslerllp.com

Michael R. Delhagen
(646) 833-0880
mdelhagen@tresslerllp.com

August 9, 2024

**VIA E-MAIL** – ken@anspachlawoffice.com

Kenneth Anspach, Esq.
Anspach Law Office
111 West Washington Street
Chicago, IL 60602

|  |  |  |
|---|---|---|
| Re: | Insured: | Schmidt Advisory Services, Inc. d/b/a Catalyst Wealth Management |
|  | Insurer: | Markel American Insurance Company |
|  | Policy: | Investment Advisor, Professional Services and Directors and Officers Liability Policy |
|  | Policy No.: | PL86085C |
|  | Policy Period: | January 30, 2023 to January 30, 2024 |
|  | Matters: | (1) *CBL Investments, LLC v. Sanford Schmidt, Schmidt Advisory Services, Inc., d/b/a Catalyst Wealth Management;* (2) A January 22, 2024 email from James P. Muraff to Sanford Schmidt; and (3) *Diane Fowler, et al. v. Schmidt Advisory Services, Inc. d/b/a Catalyst Wealth Management, et al.* |
|  | Markel Ref. No: | FA400829 |
|  | Tressler File No.: | 10988-390 |

Dear Ken:

    As you know, we represent Markel Service, Inc. ("MSI"), the claim service manager for Markel American Insurance Company ("MAIC"), in connection with following matters:

(1) *CBL Investments, LLC v. Sanford Schmidt, Schmidt Advisory Services, Inc., d/b/a Catalyst Wealth Management, and Schmidt Financial Group, LLC,* Case No. 2024L001179, filed on February 1, 2024 in the Circuit Court of Cook County, Illinois, (the "*Lorenzen* Lawsuit");

(2) A January 22, 2024 email from James P. Muraff to Sanford Schmidt requesting a tolling agreement from Schmidt Advisory and seeking information pertaining to Schmidt Advisory's insurance policy (the "Muraff Matter"); and

(3) *Diane Fowler, et al. v. Schmidt Advisory Services, Inc. d/b/a Catalyst Wealth Management, Sanford Schmidt, Ethan Schmidt, Jordan Schmidt, and Jason Cloth,* Case No. 2024CH01610 filed on March 5,

Kenneth Anspach, Esq.
August 9, 2024
Page 2 of 4

      2024 in the Circuit Court of Cook County, Illinois, (the "*Fowler* Lawsuit").

(collectively, the "Noticed Matters[1]").  This letter responds to your letters dated June 3, 2024 and June 9, 2024 and is further to my letter dated May 2, 2024, issued on behalf of MAIC, regarding coverage for the Noticed Matters under Investment Advisor, Professional Services and Directors and Officers Liability Policy No. PL86085C (the "Policy").

    We are sending this letter to you in your capacity as the authorized insurance representative for the **Insureds**.[2]  If you are not acting in that capacity, please advise accordingly.

    In our May 2, 2024 letter, MAIC advised that coverage is unavailable for the Noticed Matters based upon one or more provisions of the Policy, including the Sale of Securities Exclusion and the terms of the Insuring Agreement 2.  Specifically, MAIC advised that coverage for the Noticed Matters is excluded pursuant to Exclusion J.2. (the "Sale of Securities Exclusion") because each of the investments at issue in the Noticed Matters are **Securities,** as that term is defined in the Policy, and because the **Insured** received a commission or other remuneration in connection with the at-issue investments.  MAIC further advised that pursuant to the definition of **Insured**, the Policy provides limited coverage to Schmidt Financial under Insuring Agreement 2. as a **life and health insurance agency**.  Because that coverage is not implicated here, MAIC advised that there is no coverage for Schmidt Financial, nor anyone acting on behalf of Schmidt Financial, in connection the Noticed Matters, and MAIC respectfully declined coverage for Schmidt Financial on that basis.

    In your June 3, 2024 letter, you argue that coverage for the Noticed Matters is triggered under Insuring Agreement 2. because Insuring Agreement 2. provides indemnity coverage for "a . . . professional service provider," which is defined in the Policy to mean "any individual or entity specifically listed on the Schedule of Professional Service Providers endorsement or other endorsement to this Policy that renders professional services."   You assert that Mr. Schmidt is a "professional service provider" because he is listed on the Schedule to the Life Product Sales Coverage – Named Individual Professional Liability Endorsement  ("Life Product Sales Endorsement"), which is an "other endorsement to the Policy."[3]

---

[1] In your June 3, 2024, you note that the Muraff Matter "appears to be no longer an issue."  Please advise whether the Muraff Matter is no longer being pursued by the claimant or whether Schmidt is no longer pursuing coverage for the Muraff Matter.  Given that your letter did not address the Muraff Matter, we continue to assert that this matter is excluded pursuant to the Sale of Securities Exclusion as well as the excluded pursuant to the Specified Person, Organization, Service Or Activity Exclusion Endorsement (the "Specified Organization Exclusion Endorsement").

[2] Bolded terms are as defined in Investment Advisor, Professional Services and Directors and Officers Liability Policy No. PL86085C (the "Policy") issued to Schmidt Advisory Services, Inc., d/b/a Catalyst Wealth Management ("Schmidt Advisory") for the period January 30, 2023 to January 30, 2024 (the "**Policy Period**").

[3] Your letter does not address coverage for Schmidt Financial.  In its May 2, 2024 letter, MAIC advised that the Policy provides limited coverage to Schmidt Financial under Insuring Agreement 2. as a **life and health insurance agency**.  Because that coverage is not implicated here, MAIC concluded that there is no coverage for Schmidt Financial, nor anyone acting on behalf of Schmidt Financial, in connection the Noticed Matters and MAIC respectfully declined coverage for Schmidt Financial on that basis.

You also argue that the exclusion in Paragraph B.1. of the Life Product Sales Endorsement does not apply to Mr. Schmidt because he is a "registered investment adviser" who acts on behalf of Schmidt Advisory and that, pursuant to Paragraph B.2. of the Life Product Sales Endorsement, the Sale of Securities Exclusion does not apply "with respect to coverage provided by" the Life Product Sales Endorsement.

MAIC has considered the points raised in your June 3, 2024 letter and has concluded again that the Life Product Sales Endorsement only provides coverage to Sanford and Ethan Schmidt for **Claims** arising out of their professional services in connection with the sale of life products. The investments at issue in the Noticed Matters were not "life products." Accordingly, the Policy provides no coverage under Insuring Agreement 2.

In addition, Paragraph B.2. of the Life Product Sales Endorsement is a replacement for the Sale of Securities Exclusion for **loss** in connection with any **claim** alleging, arising out of, based upon, or attributable to the purchase or sale of **securities** as a **registered representative. Registered representative** is defined in the Policy to mean a person who:

1. Is registered with the Financial Industry Regulatory Authority (FINRA) or its successor as a **registered representative** of a **broker** or **dealer** pursuant to the provisions of the Securities Exchange Act of 1934; and

2. Is in the business of buying and selling securities for the account of others, including but not limited to, direct participation products such as limited partnerships, shares in mutual funds, unit investment trusts and variable annuities.

**Registered representative** does not include any person while acting in the capacity of a principal of a **broker** or **dealer**, including but not limited to a General Securities Principal or Limited Principal General Securities Sales Supervisor.

In the first instance, in none of the Noticed Matters is Mr. Schmidt alleged to have acted as a **registered representative**, nor is he alleged to have acted as a life insurance agent, therefore, the language of the endorsement does not apply to **loss** in connection with the Noticed Matters. Similarly, Mr. Schmidt is a principal of Schmidt Advisory, which is a **broker** or **dealer**, as those terms are defined in the Policy. Accordingly, Mr. Schmidt is not a **registered representative** and the language of the endorsement does not apply to **loss** in connection with the Noticed Matters for this reason, as well. Moreover, the carve-back to Paragraph B.1. in the Life Product Sales Endorsement is meant to provide coverage in certain instances where Paragraph B.1. would otherwise exclude coverage. Because Paragraph B.1. does not apply here, the carve-back is irrelevant to coverage for Mr. Schmidt under the Life Product Sales Endorsement.

Finally, Paragraph B.2. is meant to apply "with respect to coverage provided by this endorsement." Because no coverage is provided by the Life Product Sales Endorsement with

respect to the Noticed Matters, Paragraph B.2. is not applicable here. Accordingly, the Sale of Securities Exclusion in the Policy is still applicable and excludes coverage for the Noticed Matters.[4]

In your June 9, 2024 letter, you forward a letter dated June 4, 2024 from Alexander Loftus of Loftus & Eisenberg, Ltd., counsel for the underlying plaintiff in the *Fowler* Lawsuit. Mr. Loftus's June 4, 2024 letter purports to be a "policy limit demand," in which the Class seeks the remaining policy limits to settle the *Fowler* Lawsuit (the "*Fowler* Settlement Demand"). In your letter, you demand that Markel agree to settle the *Fowler* Lawsuit for $2 million based on Mr. Loftus's demand. However, based upon our further conversations, we understand that the **Insured** is not asking MAIC to fund the "limit" demand made by Loftus in connection with the *Fowler* Lawsuit at this time because doing so would leave no money available to fund possible resolutions of other matters at issue here, including the *Lorenzen* Lawsuit. Please let me know if you would like to discuss this issue further.

### Reservation of Rights

MAIC continues to reserve all rights, remedies and defenses under the Policy and applicable law. Nothing stated herein, or not stated, shall be deemed to be a waiver or compromise of any rights, remedies or defenses which MAIC has or may obtain.

Please do not hesitate to contact me if you would like to discuss any of the above.

Very truly yours,

Michael R. Delhagen

---

[4] We also note that even if the Sale of Securities Exclusion did not apply to the Noticed matters (and it does), coverage would otherwise also be excluded for the Noticed Matters pursuant to Exclusion J.1., which provides that the Policy provides no coverage for:

> Activities of any **insured** as an underwriter, **broker** or **dealer**, or mortgage **broker** (as those terms are defined in the Investment Company Act of 1940, the Securities Act of 1933, or the Securities Exchange Act of 1934, including their amendments) in **securities**;

Pursuant to the allegations in the complaint, it appears that Mr. Schmidt is a **broker**, as that term is defined in the Policy. Because the Policy precludes coverage for activities of any **insured** as a **broker** in **securities**, MAIC also respectfully declines coverage on that basis.